320 So.2d 188 (1975)
STATE of Louisiana
v.
Arnold Ray O'CONNER.
No. 56386.
Supreme Court of Louisiana.
October 1, 1975.
*189 Murphy W. Bell, Director, Roland T. Huson, III, Appellate Counsel, Baton Rouge, for defendant-appellant.
*190 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Bryan E. Bush, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By bill of information defendant Arnold Ray O'Conner was charged with armed robbery, La.R.S. 14:64. He was tried by a jury of twelve, found guilty as charged and sentenced to serve forty years at hard labor.
The prosecution arises out of these facts:
On the evening of September 29, 1973, as a young woman was leaving her home alone she was attacked by an assailant. Her screams startled the attacker and he fled. She returned to her house, locked the door and telephoned one of her friends for help. Afterward she phoned the police. While she was doing so the attacker returned and literally broke the door down to gain entry into her house. He ran into the kitchen, picked up a knife and forced the victim to surrender the keys to her car. He then compelled her to leave the house with him. She was forced into her car before the police arrived, and the assailant drove to a deserted house on Plank Road where he proceeded to rape her. After the act, the attacker bound the victim and shut her in a closet. He then left the house.
About an hour later the victim succeeded in loosening the bonds around her feet, struggled to a nearby window and called for help. An employee of the Louisiana Capitol Police driving by at the time heard her cries and went to her rescue. He released her from the ropes binding her hands and feet and called the city police.
A description of the attacker was given to the police by the victim, and the description was broadcast. Plain clothes police on the special "burglary intercept force" thought they recognized the description as a man they had previously picked up on a concealed weapon charge. These officers proceeded to the O'Conner's apartment and questioned O'Conner and his wife. A short while later several detectives assigned to the case arrived at the O'Conner apartment. They obtained a waiver of rights from O'Conner to allow them to search his apartment. The search revealed clothes similar to those worn by the victim's assailant. Also, two keys were found in a pair of pants fitting the description of those worn by the assailant. The keys fit the victim's car.
O'Conner was arrested. Approximately twelve hours after the offense, O'Conner was placed in a line-up at which he was positively identified by the victim.
A number of bills of exceptions were reserved at the trial which began on April 8, 1975 and ended on April 15, 1975.

ERRORS NOS. 1, 2, 3, 4 and 5
These bills were reserved when the trial judge refused to allow the defense challenge for cause of five prospective jurors. These challenges were based upon the ground of racial prejudice, which the defense argues is indicated for all five prospective jurors by the colloquy between defense counsel and the prospective juror Norman L. Thibodeaux:
"Q. I want to know whether you whetherif youyou said you were free of racial prejudiceI want to know whether or not you believe whites and blacks should be allowed to intermarry
A. No.
Q. You don't believe that?
A. No.
Q. So you are prejudiced aren't you?
A. I guess I am."
In each instance as a result of similar questions and answers defense counsel sought and was denied a challenge for cause, and in each instance a bill of exception was reserved.
*191 To support his contention here defense counsel relies upon Article 797 of the Code of Criminal Procedure assigning as a cause for challenge of a juror that "The juror is not impartial, whatever the cause of his impartiality" and that there is "enmity between the juror and the defendant. . . such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." These causes have not been established in the record.
We are satisfied that nothing in this record demonstrates enmity of the prospective jurors against the defendant. The sole question, therefore, is whether their negative attitude toward racial intermarriage is cause to brand them as partial to such an extent that they are unable to "render an impartial verdict according to the law and the evidence." La.Code Crim. Proc. at 797. A person's negative opinion on racial intermarriage is not of itself conclusive or even persuasive, in determining his ability to judge fairly and justly, free from prejudice.
In his voir dire examination of the first panel of six prospective jurors, several of whom are subject to these bills of exceptions, the trial judge sought to elicit answers which would reveal racial prejudice. All members of the first panel, including Thibodeaux, responded that the fact that the accused was black would have no effect on their judgment. Defense counsel in his voir dire examination revealed that the victim in the instant case was white and the accused was a black man. He then asked each prospective juror whether he was free of racial prejudice and whether he had harbored animosity toward the accused because he was black and the victim was white. Each prospective juror ultimately responded that he was free of prejudice.
A trial judge's discretion in ruling on a challenge for cause will be sustained unless unwisely exercised, provided he allows considerable latitude on voir dire examination. State v. Normand, 298 So.2d 823 (La.1975); State v. Simpson, 247 La. 883, 175 So.2d 255 (1965); State v. Square, 257 La. 743, 244 So.2d 200 (1971).
And to determine a juror's competency, a trial judge is not expected to rely upon one isolated area of the voir dire examination; the true test of the juror's qualification to serve is his ability to judge impartially based upon the law and the evidence admitted at the trial. Thus, a judge is not bound by a juror's answer to a particular question when the answer is opposed to and inconsistent with other answers and other facts and circumstances known to the judge as a result of the entire examination. State v. Oliphant, 220 La. 489, 56 So.2d 846 (1925).
These bills have no merit.

ERRORS NOS. 6, 8 and 14
Under this heading defense counsel asserts that the trial court erred in allowing the admission of the fruits of a search executed on O'Conner's apartment without a warrant, following his signing of a search waiver, when the waiver was signed involuntarily. Under these circumstances, it is contended, the search was illegal and the objects seized as a result were illegally obtained and as such were inadmissible as evidence against O'Conner under principles recognized in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and State v. Saia, 302 So.2d 869 (La.1974).
Although recognizing that a search conducted as a result of consent on the part of the party involved is a specifically established exception to the constitutional requirement that a search must be based upon a warrant issued upon probable cause, defense counsel contends that the waiver or permission to search in the instant case was signed under an umbrella of intimidation and coercion. Moreover, defendant was not given the Miranda warnings. For *192 this reason, he argues, there was no consent at all, and, therefore, the search and seizure was illegal.
The voluntariness of such a waiver is a question of fact to be determined from the totality of the circumstances which gave rise to the giving of consent.
The burden of proving that the consent was invalid on a motion to suppress is upon the defendant. La.Code Crim.Proc. Art. 703. It does not appear that the defendant has discharged this burden.
At the hearing on the motion to suppress the evidence obtained in a search of his residence, the defense established that at the time the waiver was executed, approximately ten police officers, some plainclothes and some uniformed, were present on or around his premises. No Miranda warnings were given defendant, he was simply requested to consent to a search. It was then three o'clock in the morning.
These circumstances, the confrontation between defendant and his wife and the police officer, are advanced as reasons to conclude that the consent to search was not free and voluntary. O'Conner did not take the witness stand at the hearing on the motion to suppress for the limited purpose of testifying that his signature to the waiver was not free and voluntary.
There is, therefore, no direct evidence of intimidation by the police. In fact, the whole theory of the defense seems to be that the police planted the keys to the victim's car in his clothes. And the record will show that defendant did not object to having the police search his apartment. To the contrary, according to the witnesses, he stated that he had nothing to hide and seems to have wanted the search done and over with.
Other issues raised by these bills have not been argued and are considered waived.
The issues presented are without merit.

BILLS 7, 9 and 15
Under this heading the defense contends that the reference to rape by the State's witness in this trial for armed robbery is error.
The contention is that evidence of criminal activity other than that for which defendant was on trial was inadmissible, except under specific statutory exceptions permitting evidence which is part of the res gestae, or evidence of criminal acts which is relevant to show intent, knowledge or system under Sections 446, 447 and 495 of Title 15 of the Revised Statutes. State v. Prieur, 277 So.2d 126 (La.1973) is also cited to support the contention.
This contention was squarely met and answered in the recent case of State v. Hatch, 305 So.2d 497 (La.1975). There, speaking for a full court with only one concurring vote, Justice Calogero said:
"Force or intimidation being an essential element of the crime of armed robbery, the State had the burden of proving this element beyond a reasonable doubt. For this purpose, the victim's clothing, which the assailant cut off of her with a large knife, and the testimony of the coroner, corroborating the victim's story that she had been raped prior to the robbery, was relevant.
"Furthermore, their probative value warranted their introduction notwithstanding the coincident prejudicial effect."
True the evidence of rape is highly prejudicial, it is at the same time highly probative, material and relevant.
These bills have no merit.

ERRORS NOS. 11 and 12
In Bill No. 11 the defense alleges that State Exhibit 27, consisting of Kool Cigarette butts and an empty cigarette package, was allowed into evidence before a *193 proper foundation was laid. These objects, recovered at the scene of the crime, are connected both to the crime and to the defendant by the testimony of the victim. Also two detectives identified the exhibits as objects found at the scene of the crime. In addition, the relevance of these objects is further established by the fact that a package of Kool cigarettes was seized on defendant's person at the time of his arrest and he was observed purchasing a package of Kool cigarettes some time thereafter.
When the cigarette butts and empty cigarette package were found, the detectives testified they brought them to the police crime lab. One of the officers testified that he personally brought the objects from the crime lab to the courtroom.
Although the victim could not identify the brand of cigarettes, she testified that defendant smoked in her car and at the house on Plank Road. Given these facts, the cigarette butts and package found at those locations were relevant and admissible to corroborate her testimony. The weight of the evidence was a question for the jury. La.R.S. 15:441; State v. Sarrazin, 291 So.2d 393 (La.1974); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969).
In Bill No. 12 the defense alleges that the trial court erred in requesting defendant to demonstrate in court how he opened his cigarette pack, such a display being violative of his right not to testify against himself.
A detective testified that he found an empty Kool package at the scene of the rape on Plank Road, and that the package was opened from the bottom. This, he said, was a most unusual way to open a package of cigarettes, and he had never seen it before. Later, prior to taking O'Conner to the Baton Rouge jail to be printed and processed, he saw O'Conner buy a package of Kool cigarettes and open them from the bottom.
The jury was then retired. At that point the prosecutor asked defense counsel if he would ask his client to show the court how the pack of cigarettes in his pocket had been opened. When defense counsel deferred to the court, the prosecutor asked the court to have the defendant produce the pack of cigarettes in his pocket for inspection. Out of the presence of the jury, the trial judge ordered defendant to produce the cigarette pack and observed that it was opened from the bottom. They were Kools.
The jury was returned to the box. Whereupon, the prosecutor asked the defendant to stand and hand the package of Kool cigarettes in his left-hand shirt pocket to the officer. The defendant complied. Later defendant took the stand in his own behalf and explained that he opened his cigarettes from the bottom to keep the filters clean.
The constitutional privilege against self-incrimination only protects an accused from being compelled to testify against himself or otherwise provide the State with evidence of a testimonial or communicative nature. La.Const. arts. I & IX; State v. Washington, 294 So.2d 794 (La. 1974), Accused made to display a bruise mark; State v. Jones, 261 La. 422, 259 So.2d 899 (1972), defendant compelled to stand to be identified; State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970), defendant compelled to utter "Hurry up" for voice identification; State v. Thompson, 256 La. 934, 240 So.2d 712 (1970), defendant compelled to give handwriting sample; State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert, denied 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691, compulsory extraction of blood samples; State v. Junius, 257 La. 331, 242 So.2d 533 (1970), accused forced to reveal scar on arm; State v. Roy, 220 La. 1017, 58 So.2d 323 (1952), defendant compelled to have her height measured before the jury; State v. Prudhomme, 25 La.Ann. 522 (1873), comparison of defendant's boots with tracks left at scene of the crime. The *194 rule is similar with respect to the Fifth Amendment privilege against self incrimination. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
This bill has no merit.

ERROR NO. 13
Defendant took the stand at the trial in his own behalf. In cross-examination by the prosecutor, this question was propounded:
"In face of all the evidence that's been put on this stand, sirsworn testimony after sworn testimony, siryou are asking these gentlemen to believe that everybody is lying, save you, despite the fact that evidence was found in your possession which belonged to this young lady? A purse found on North Street, which apparently had been dumped there by someone who had to drive or be on North Streetand you were there, on North Street?"
According to the defense, this comment is nothing more than personal opinion of the prosecuting attorney unsupported by any testimony that the victim's purse was dumped on North Street. The question is whether the quoted comment is an expression of the prosecutor's personal opinion of the defendant's guilt which the law prohibits.
Statutory law allows the prosecutor to draw reasonable inferences from evidence in the record. La.R.S. 15:481, 482. It is reasonable for the prosecutor to infer that the victim's purse was dumped on North Street by the defendant because of the other evidence linking him to the victim, and because defendant's own testimony indicates that he was walking on the streets in the area after the crime was committed. A considerable latitude is allowed the prosecutor in commenting on the evidence, especially by way of interrogation on cross-examination, but this latitude does not extend to an expression of the prosecutor's personal opinion that the defendant on trial is guilty. State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). There is no violation of these rules in the instant case.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., concurs being of the opinion that there is no merit in any of defendant's bills.
TATE, J., concurs. Error 13 concerns a most improper question, since argumentative and verging on reversible prosecutorial comment. Although in context, probably harmless, as error, we should denote it as such to avoid recurrence.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
In my opinion the facts set out by the majority upon which they base their holding of a constitutional search are not the full facts disclosed in the record. Under the facts in the record, there was an unconstitutional search by reason of a fraudulent obtaining of a "consent to search" from the wife while the husband-defendant was present in the adjoining room.
I respectfully dissent.