567 So.2d 132 (1990)
STATE of Louisiana, Appellee,
v.
Ricky Darren HEAROLD, Appellant.
No. 21578-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
*133 Louis Scott, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Mark Donahoe, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The defendant, Ricky Darren Hearold, appeals his convictions for possession of methamphetamine with intent to distribute and conspiracy to possess methamphetamine with intent to distribute. We affirm the defendant's conviction for possession of methamphetamine with intent to distribute and reverse his conspiracy conviction.

*134 FACTS
On October 6, 1988, at approximately 11 p.m., pursuant to information provided by a confidential informant, members of the Monroe Metro Narcotics Unit located and began following an automobile occupied by the defendant and William Ray Costin. As the vehicle prepared to enter Interstate 20, West Monroe Police Officer Brian Boney and Ouachita Parish Sheriff Deputies James Purvis and Paul Benjamin turned on their sirens and lights. The suspect vehicle was forced off the ramp leading to the interstate and became stuck in the mud along the roadside. The defendant, who was driving, exited the vehicle, stepping toward the driver's side rear tire. As he did so, he threw a soft drink bottle into the air. This action was apparently an attempt to divert the attention of the officers, which it did, momentarily. The defendant and Costin were then arrested. No drugs were found on either of the suspects or inside the vehicle. A book entitled, Physician's Desk Reference, was found in the vehicle.
In the tire track under the driver's side rear tire of the suspect vehicle, a plastic bag was found. This bag contained between 3.2 and 3.5 grams of a substance later determined to be methamphetamine. The packet had not been run over by the vehicle and appeared to have been placed there after the vehicle came to a stop.
On October 28, 1988, the defendant was charged by bill of information with one count of possession of methamphetamine with intent to distribute, and one count of conspiring with William Ray Costin to possess methamphetamine with intent to distribute.
On April 26, 1989, following a jury trial, the defendant was found guilty as charged on both counts. The court then sentenced the defendant to two concurrent terms of six years at hard labor. The defendant has appealed his convictions.

SUFFICIENCY OF EVIDENCE
The defendant asserts there is insufficient evidence to support his convictions of possession with intent to distribute and conspiracy to possess with intent to distribute methamphetamine. We find there is sufficient evidence upon which to base the defendant's conviction for possession with intent to distribute. However, there is insufficient evidence upon which to base the conspiracy conviction and therefore that conviction must be reversed.
The standard of review for the sufficiency of evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the state proved the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Hobbs, 494 So.2d 1246 (La.App. 2d Cir. 1986). The statutory rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, this statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the prosecution relies upon circumstantial evidence to prove an element of the offense. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir. 1984), writ denied 463 So.2d 1317 (La.1985).
Although the circumstantial evidence rule may not establish a stricter standard of review than the more general rational jurors' reasonable doubt formula, it does emphasize the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge upon the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983); State v. Wright, supra; State v. Eason, supra.
Ultimately, all evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Wright, supra; State v. Eason, supra.

*135 Possession With Intent to Distribute

The essential elements of possession with intent to distribute, which the prosecution must prove beyond a reasonable doubt, are: (1) the defendant knowingly or intentionally; (2) possessed the controlled dangerous substance; (3) with the intent to distribute. LSA-R.S. 40:967; State v. Coleman, 552 So.2d 513 (La.App. 2d Cir. 1989), writ denied 559 So.2d 138 (La.1990).
The record shows that the prosecution carried its burden of proving that the defendant knowingly or intentionally possessed the methamphetamine. After attempting to flee from law enforcement officers, the defendant, who was driving Costin's vehicle, left the roadway and the vehicle became mired in the mud on the roadside. Upon exiting the vehicle, the defendant threw a bottle into the air. The attention of the arresting officers was momentarily diverted by this ploy. After being placed under arrest, the defendant and the vehicle were searched. No drugs were found on the person of the defendant or in the vehicle. However, a plastic bag containing approximately 1/8 oz. of methamphetamine was found lying on the ground behind the rear tire on the driver's side of the car. The packet was lying in the track made in the mud by the tire of the vehicle and had not been run over by the tire. This indicated that the packet was placed there after the vehicle came to rest in the mud. The defendant's companion, Costin, was never on the driver's side of the vehicle after it stopped. These facts lead to the conclusion that the packet was in the defendant's possession and that he placed the packet in the tire track in an attempt to conceal it. The defendant's actions in attempting to dispose of the methamphetamine shows beyond a reasonable doubt that the defendant's possession of the drug was knowing and intentional.
In addition to showing the defendant's knowing or intentional possession, the prosecution was also required to show that the defendant had the intent to distribute the methamphetamine. Factors useful in determining whether circumstantial evidence is sufficient to prove that an intent to distribute a controlled dangerous substance has been sufficiently shown include: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount was such as to create a presumption of an intent to distribute; (4) expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Coleman, supra.
The first factor in State v. House, supra, concerns prior drug trafficking. In this case, the state did not prove previous distributions or convictions for possession or distribution of controlled dangerous substances. However, evidence was admitted without objection that law enforcement officials had received information that the defendant was trafficking in drugs. In addition, the defendant had been under investigation for involvement in drug activity for a considerable period of time prior to this offense. This evidence was elicited in response to questioning by defense counsel.[1]
As to the second factor in State v. House, supra, concerning whether the drug was in a form usually associated with distribution to others, we note that in this case, a bag containing between 3.2 and 3.5 grams of methamphetamine was recovered. This amount is too large for personal use and instead indicates that the drugs were packaged in bulk, for a later breakdown for distribution to others.
Concerning the amount of drugs recovered, the evidence satisfies the third and fourth factors under State v. House, supra. *136 Both Officer Boney and Deputy Benjamin identified the amount of methamphetamine found here as an "eight ball" or one-eighth of an ounce. Officer Boney testified that an "eight ball" is a quantity obtained by a dealer, not for personal use, but to be broken down into smaller quantities, and then sold. Officer Boney testified that methamphetamine is ordinarily injected and that a gram will yield approximately 12 injections. Deputy Benjamin testified that an "eight ball" would easily contain 17 to 18 doses of the drug, but that it could be broken down further. The import of the testimony of both Officer Boney and Deputy Benjamin is that, based upon their field experience, the possession of an "eight ball" of methamphetamine can be presumed to be for purposes of further distribution. An "eight ball" is not consistent with personal use, as personal users would generally be in possession of one gram or less of the substance. Therefore, under factors three and four of State v. House, supra, possession of the quantity of methamphetamine recovered in this case indicates the defendant's intent to distribute.
There is also some limited evidence of an intent to distribute under the fifth factor in State v. House, supra, concerning possession of paraphernalia. Although no traditional types of paraphernalia, such as baggies or scales, were found, a Physician's Desk Reference (PDR) was in the vehicle. Deputy Benjamin testified that a PDR is an item commonly found in cases of drug distribution. On cross examination, he stated that the presence of a PDR in the same area as illegal narcotics would, in his opinion, constitute evidence of drug distribution.
Based upon the factors discussed above, the record contains sufficient evidence to support the defendant's conviction of possession of methamphetamine with intent to distribute.

Conspiracy to Possess With Intent to Distribute
The record does not contain sufficient evidence upon which to base the defendant's conviction for conspiracy to possess methamphetamine with intent to distribute.
Criminal conspiracy is defined in LSA-R.S. 14:26 as follows:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consummated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other.
In a conspiracy, it is the combination of at least two minds for an unlawful purpose which is the foundation of the offense. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (La.1950); State v. Joles, 485 So.2d 212 (La.App. 2d Cir.1986).
The state, in its brief, argues there was sufficient evidence upon which to base the defendant's conspiracy conviction. The state cites the facts that the defendant and Costin were together in Costin's car. The defendant was driving the vehicle, although the vehicle was allegedly owned by Costin. The defendant attempted to flee from officers when the officers undertook to stop the vehicle he was driving. These are the only facts offered by the state to establish a conspiracy, other than a statement made by Costin after his arrest.
At trial, over the defendant's objection, Deputy Benjamin testified that, after the defendant and Costin were arrested, Benjamin informed Costin of his rights and then questioned him. Costin told Deputy Benjamin that "he [Costin] did have a methamphetamine problem but he wasn't the one dealing tonight." The defendant objected that this statement was hearsay and was not a properly admissible statement by a coconspirator.
The defendant is correct in arguing that this statement constituted inadmissible *137 hearsay. The statement should not have been admitted.
LSA-C.E. Art. 801(D)(3)(b) provides that a statement is not hearsay if it is offered against a party, and the statement is made by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established.
Our review of the record shows that the statement by Ray Costin was not admissible as a coconspirator's statement for two reasons. First, a prima facie case of conspiracy must be established before a statement by a co-conspirator may be introduced. Such a requirement is clearly established by the Code of Evidence and was in effect even before the enactment of the Code of Evidence. See State v. Johnson, 438 So.2d 1091 (La.1983); State v. Dupree, 377 So.2d 328 (La.1979); State v. Meredith, 403 So.2d 712 (La.1981); State v. Carter, 326 So.2d 848 (La.1975).
In the present case, the evidence offered by the state at the time the statement was admitted did not establish a prima facie case of conspiracy. There was no showing of an agreement or combination between the defendant and Costin to jointly possess methamphetamine with the intent to distribute. Therefore it was improper for the trial court to allow the statement to be admitted into evidence.
Second, the statement was not made while participating in a conspiracy to commit a crime and in furtherance of the objective of the conspiracy, but, rather, was made after Costin and the defendant had been taken into custody. The statement was made by Costin in an attempt to deny any criminal involvement on his part. Following arrest, any conspiracy that could have been shown to exist would have come to an end. The statement was not made while participating in a conspiracy to commit a crime and in furtherance of the objective of the conspiracy as required by LSA-C.E. Art. 801(D)(3)(b). In light of the above discussion, the statement should not have been admitted into evidence.[2] Further, the other evidence and factors argued by the state do not prove the elements of a conspiracy beyond a reasonable doubt. There simply is no showing in this record of an agreement or combination between the defendant and Costin to distribute methamphetamine. Even when the statement is considered, it does not support a finding of conspiracy. Therefore, because the evidence contained in the record is insufficient, under the standards set forth in Jackson v. Virginia, supra, to show beyond a reasonable doubt that the defendant was engaged in a conspiracy to possess methamphetamine with intent to distribute, the jury verdict to that effect must be overturned.

CLOSING ARGUMENT
The defendant argues the trial court erred in improperly restricting his closing argument. At trial, law enforcement officials testified that the plastic bag containing the drugs in question was not tested for fingerprints because it is difficult to get good impressions from plastic. In his closing argument, defense counsel sought to place his fingerprints on a piece of plastic to demonstrate to the jury that a useful fingerprint could be obtained from plastic. The prosecution objected to such a demonstration and the trial court sustained the objection. The defendant now argues that the trial court's action in sustaining the objection deprived him of a fair trial.
The scope of closing argument is set forth in LSA-C.Cr.P. Art. 774 which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.

*138 The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The jurisprudence dealing with demonstrations during closing arguments has dealt with such demonstrations by the prosecution rather than the defense. State v. Ballard, 351 So.2d 484 (La.1977); State v. Roy, 220 La. 1017, 58 So.2d 323 (1952). However, the same considerations and criteria for the use of such demonstrations apply when sought to be undertaken by the defense.
In State v. Ballard, supra, ruling on the use of a demonstration during closing argument, the court found that even demonstrations in court by a sworn witness are subject to the requisite foundation of similarity of circumstances. See also State v. Roy, supra.
Other cases dealing with various types of in-court demonstrations have held that the criteria for withholding permission for such demonstrations includes lack of similarity between courtroom conditions and the actual condition sought to be retested, as well as the possible disruption of orderly and expeditious proceedings. State v. Rault, 445 So.2d 1203 (La.1984), cert. denied 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Mays, 315 So.2d 766 (La. 1975).
The trial court has great discretion in permitting or refusing in-court demonstrations. State v. Mays, supra. In the present case, the trial court did not abuse its discretion in refusing to allow defense counsel to use his demonstration concerning fingerprints on plastic during his closing argument.
The plastic bag in question in this case was recovered from wet, muddy conditions which could have affected the ability to obtain fingerprints. Defense counsel was attempting to demonstrate that fingerprints could be obtained from a clean, dry piece of plastic. Because of the dissimilarity between the demonstration and the actual condition of the plastic bag in question, the trial court did not err in preventing defense counsel from proceeding with his demonstration.[3]

MISTRIAL
On several occasions during the trial, the defendant moved for a mistrial following responses by law enforcement officials to answers posed by both the prosecution and the defense. We conclude that the trial court acted correctly in denying the defendant's motions for a mistrial.
The mandatory grounds for mistrial are provided in LSA-C.Cr.P. Art. 770 for certain types of comments by a judge, prosecutor or court official. These remarks may include references to race, references to inadmissible evidence of other crimes, the failure of the defendant to testify or the failure of the court to direct a verdict. However, law enforcement officials are not considered court officials, therefore the mandatory mistrial provisions of LSA-C. Cr.P. Art. 770 are not applicable. State v. Perry, 420 So.2d 139 (La.1982), cert denied 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Johnson, 440 So.2d 838 (La.App. 2d Cir.1983). Rather, such occurrences are governed by LSA-C.Cr.P. Art. 771 which provides in pertinent part:
In the following cases, upon request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury ...
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark is within the scope of Article 770.
In such cases, on the motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not *139 sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant, depriving him of a fair trial. State v. Smith, 418 So.2d 515 (La.1982); State v. Cushenberry, 407 So.2d 700 (La.1981). The determination of whether prejudice has resulted lies in the trial court's sound discretion. State v. Hall, 549 So.2d 373 (La.App. 2d Cir. 1989), writ denied 556 So.2d 1259 (La.1990); State v. McLeland, 456 So.2d 633 (La.App. 2d Cir.1984), writ denied 461 So.2d 312 (La. 1984).
The defendant first moved for a mistrial based upon Deputy Paul Benjamin's response to a prosecution question. The prosecution was questioning Deputy Benjamin regarding his investigation on the night the defendant was arrested. The following exchange occurred:
[Prosecution]: And what did the investigation consist of? What did you do?
[Deputy Benjamin]: We have (sic) received information that Mr. Costin and Mr. Hearold were involved in narcotics dealings in the eastern part of the parish.
At that point, the defendant moved for a mistrial, arguing that Deputy Benjamin's response was an improper reference to other crimes. The court ruled that this was not an improper reference to another crime committed by the defendant.
The answer given by the officer was somewhat unresponsive to the question. Further, the question was asked by the prosecutor as an initial inquiry concerning the general basis for the stop of the defendant's car. Similar testimony had already been given by Officer Boney and there had been no objection by the defendant.
When the motion for mistrial was denied, the defendant did not request an admonition that the jury disregard the officer's comment. However, outside the presence of the jury, the court instructed the witness not to testify "other than the fact of the immediate information which prompted him to do the actions on October the 6th which is the matter before us."
Although the officer's response to the prosecutor's question was perhaps too broad, the trial court curtailed further testimony of this type by the officer. The defendant has failed to demonstrate that the trial court's ruling was erroneous or that he suffered prejudice. Under all these circumstances we find no reversible error.
The defendant made a total of four motions for mistrial. However, the motion for mistrial discussed above is the only motion argued in brief by the defendant. Other motions for mistrial were not argued in brief and therefore are considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Wright, 445 So.2d 1198 (La.1984).

CONCLUSION
For the reasons stated above, we affirm the defendant's conviction and sentence for possession of methamphetamine with intent to distribute.
We reverse and vacate the defendant's conviction and sentence for conspiracy to possess methamphetamine with intent to distribute.
AFFIRMED IN PART; REVERSED AND VACATED IN PART.
NOTES
[1] In seeking to impeach the testimony of the investigating officers, the defendant elicited testimony relative to a drug investigation involving the defendant in Texas, as well as an investigation regarding the theft of a motorcycle which also had overtones of drug trafficking. The testimony concerning both of these investigations was elicited by the defense and did not represent an improper attempt by the prosecution to introduce evidence of other crimes.
[2] We find, however, that the improper admission of the statement did not prejudice the defendant with regard of his conviction for possession of methamphetamine with intent to distribute. Therefore, the admission of the statement did not constitute reversible error in the defendant's conviction for that offense.
[3] We note that had defense counsel sought to refute the accuracy of the testimony concerning fingerprints on plastic, he could have presented evidence to that effect during the trial.