DOWNING, J.
 

 |2The defendant, Jason Chad Walstrum, was charged by bill of information with two counts of armed robbery by use of a firearm, in violation of La. R.S. 14:64 and 14:64.3. He pled not guilty. Prior to trial, the charges for an additional penalty for use of a firearm, under La. R.S. 14:64.3, were
 
 nol-prossed.
 
 The defendant was tried solely on the armed robbery charges. Following a trial by jury, the defendant was found guilty as charged. The defendant moved for a new trial and for post-verdict judgment of acquittal. The trial court denied both motions. The state filed a multiple offender bill of information seeking to have the defendant adjudicated and sentenced under La. R.S. 15:529.1 on the first count. At the conclusion of a hearing, the defendant was adjudicated a second-felony habitual offender. The defendant was sentenced, under La. R.S. 15:529.1, to imprisonment at hard labor for sixty years without benefit of probation or suspension of sentence on the first count. He was also sentenced to a concurrent term of imprisonment at hard labor for sixty years on the second count. The defendant now appeals. We affirm the defendant’s convictions, habitual offender adjudication, and sentences.
 

 FACTS
 

 On June 29, 2008, Kory Bankhead and her mother, Karen Benesta, worked the closing shift at Sonic Drive-in restaurant on La. Highway 22 in Mandeville, Louisiana. Kory was the general manager and Karen worked as. the assistant manager.
 
 *323
 
 After closing the restaurant at 10:00 p.m., the mother-daughter team stayed late to change the outside menu boards. Once the menu boards were completed, Kory and Karen returned inside where an armed robber confronted them at gunpoint and demanded that they open the safe. The women pleaded for their lives and explained that they were unable to open the safe. The armed robber continued to demand money. Kory hysterically begged for her life and the life of her mother. The robber assured Kory that he would not shoot Karen and stated |3that “she look[ed] like his sister-in-law.” Kory and Karen gathered all of the money from their purses, the money from the cash drawer and the money from the bands carried by car hops, put it in a bag, and handed it to the robber. Before leaving, the robber instructed the women to refrain from movement for at least five minutes. He threatened to shoot into the building if they did not comply. The perpetrator left with the money; Kory used her cellular phone to report the robbery.
 

 In response to the report, Detective Vincent Liberto of the Mandeville Police Department investigated the crime. Kory and Karen both provided detailed descriptions of the robber. He was described as a Caucasian male with brown hair and blue eyes, wearing a black shirt with a Sean John logo, blue jeans, and a pair of brown boots. He also wore a blue bandana over a portion of his face.
 

 Detective Liberto later learned that an individual fitting the description provided by the victims had patronized a nearby Discount Zone service station shortly before the robbery. He secured surveillance footage from Discount Zone and printed still photographs from the video to show to the victims. Both victims immediately identified the man in the photographs as the same individual who robbed them at gunpoint at Sonic. The investigating detectives sent copies of the surveillance photographs of the person of interest to the print and broadcast media. In response, the detectives received several tips naming the defendant as the man in the surveillance photographs. The defendant was arrested and charged with two counts of armed robbery. A twelve-member jury unanimously convicted the defendant as charged.
 

 MOTION IN LIMINE
 

 Prior to trial, the state filed a motion in limine requesting that the defendant be compelled to provide demonstrative evidence at trial. Specifically, the state sought to have the defendant wear a bandana in the same manner in which the victims indicated the robber wore one at the time of the robbery. This evidence, |4the state asserted, was essential to test the reliability of the victims’ identifications. A hearing was held on the state’s motion and counsel for the defense objected to the use of the demonstrative evidence. Counsel argued that a demonstration of this nature would be highly prejudicial and violate the defendant’s Fifth Amendment right against self-incrimination, especially since the actual bandana allegedly worn by the perpetrator was never recovered and would not be introduced into evidence at the trial. In response, the state offered to utilize a piece of paper (instead of a bandana) to cover a portion of the defendant’s face in the demonstration. The trial court agreed to allow the paper to be used to assist the victims in their identification testimony.
 

 At trial, in connection with the identification testimony of each victim, the state requested that the defendant partially cover his face with a piece of paper. Both victims unequivocally identified the defen
 
 *324
 
 dant as the armed perpetrator with his face partially concealed.
 

 On appeal, the defendant seeks reversal of his conviction based upon an alleged violation of the Self-incrimination Clause of the Fifth Amendment, which provides that no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const. Amend. V. Although he acknowledges that no Fifth Amendment violation occurs when the state compels a defendant to present demonstrative evidence regarding identifiable physical characteristics, he argues that “[a] piece of paper covering a defendant’s face is not a physical characteristic.” Instead, the defendant argues that masking his face with the paper served only to make him look like the robber, and such an inflammatory demonstration, although purportedly used for identification purposes, was irreparably prejudicial.
 

 The Supreme Court has interpreted the Self-incrimination Clause to protect “an accused only from being compelled to testify against himself or otherwise provide |fithe State with evidence of a testimonial or communicative nature ...”
 
 Schmerber v. California,
 
 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). This protection does not extend to evidence that is demonstrative, physical, or real.
 
 See Gilbert v. California,
 
 388 U.S. 263, 265-67, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), (holding that a handwriting exemplar is not testimonial).
 
 See also Schmerber,
 
 384 U.S. at 761, 86 S.Ct. at 1830-31, (holding that a blood sample is not testimonial).
 

 The defendant herein contends that the trial court committed error when it ordered him, at the state’s request, to place a piece of paper over a portion of his face in order to give the witnesses an opportunity to identify him with a limited view of his facial features. The Supreme Court has long held that the Fifth Amendment privilege against self-incrimination offers no protection against compulsion to don an item of apparel worn by the person committing the offense in order to facilitate identification where some evidence may be material.
 
 Holt v. United States,
 
 218 U.S. 245, 252-53, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910).
 
 See Schmerber,
 
 384 U.S. at 763-64, 86 S.Ct. at 1831-32.
 

 Louisiana courts have similarly allowed the state to compel a criminal defendant to exhibit his physical features without finding an infringement of his privilege against self-incrimination. Louisiana courts have compelled a defendant to put on a shirt,
 
 State v. Morgan,
 
 333 So.2d 642, 643 (La.1976) (per curiam); to allow his height to be measured,
 
 State v. Roy,
 
 220 La. 1017, 1024-30, 58 So.2d 323, 326-28 (1952); to exhibit a scar,
 
 State v. Anthony,
 
 332 So.2d 214, 215 (La.1976); to exhibit a bruise,
 
 State v. Washington,
 
 294 So.2d 794, 796 (La.1974); and to exhibit a tattoo.
 
 State v. Wilson,
 
 329 So.2d 680, 681 (La.1976). Criminal defendants in Louisiana have also been forced to stand and identify themselves,
 
 State v. Jones,
 
 261 La. 422, 259 So.2d 899, 901 (1972); to give blood samples,
 
 State v. Dugas,
 
 252 La. 345, 354, 211 So.2d 285, 289 (1968),
 
 cert. denied,
 
 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969); to provide handwriting samples,
 
 State v. Thompson,
 
 256 La. 934, 936, 240 So.2d 712, 714 (1970); to demonstrate the manner in which they open cigarette packs,
 
 State v. O’Conner,
 
 320 So.2d 188, 193-94 (La.1975); and to say the words used by the robber who committed the crime.
 
 State v. Lacoste,
 
 256 La. 697, 719-20, 237 So.2d 871, 879, (1970).
 

 Considering the foregoing jurisprudence, and upon reviewing the record before us, we do not find that the demonstrative identification procedure utilized herein offended the defendant’s constitutional
 
 *325
 
 right against self-incrimination. The demonstration of a limited view of the defendant’s facial features was not testimonial evidence.
 

 Furthermore, we find that the overwhelming evidence of the defendant’s identity as the perpetrator of the armed robberies negated any possibility of mis-identification. The testimony presented at trial established that, shortly after the robbery, both victims immediately and unequivocally identified the individual in the Discount Zone surveillance photos as the armed perpetrator. During the police interrogation, the defendant admitted that he was, in fact, the individual in the Discount Zone photos. The defendant’s wife, Athena Walstrum, also provided testimony establishing his identity as the robber. Mrs. Walstrum testified that, on the day of the robberies, the defendant was wearing the same type of clothing described by the victims. Mrs. Walstrum further testified that she observed the defendant sweating profusely with a Sonic Drive-In bag in hand on the night of the robberies. She also later discovered a Sean John shirt burned in a grill at the home she shared with the defendant.
 

 Moreover, the trial transcript reflects that each witness unequivocally identified the defendant in open court as the perpetrator before the face-covering demonstration was ever performed. To bolster her identification of the defendant as the robber, Karen testified that during the entire encounter she stared at the 17perpetrator because she did not want to forget what he looked like. Thus, with all the evidence of the defendant’s identity produced at trial, the in-court identification alone could not have resulted in a misidentifieation of the defendant as the perpetrator.
 

 This assignment of error lacks merit.
 

 DECREE
 

 For the foregoing reasons, the defendant’s convictions, habitual offender adjudication, and sentences are affirmed.
 

 CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.