VICTORY, Judge.
The defendant, Timothy Craig Washington, was tried by jury and found guilty of manslaughter, in violation of LSA-R.S. 14:31, and sentenced to serve ten years at hard labor. On appeal, defendant complains that the trial court erroneously (1) refused to allow evidence of the victim’s arrest record, (2) refused to allow the defense to present a surrebuttal witness, (3) denied a defense motion for mistrial, and further, (4) that the evidence adduced does not support a manslaughter conviction. Finding the defendant’s assignments merit-less, his conviction is affirmed.
FACTS
On November 14, 1990 at approximately 9:30 p.m., David Stutson discovered the body of Clarence Judgeware lying in a ditch on Bolin Street in Minden and contacted the Minden police who pursued an investigation of Judgeware’s death. Investigating officers were informed that Jerome Poland, Frank Dillard, Jr., and the defendant were involved in the homicide.
Jerome Poland, Frank Dillard, Jr., and the defendant were questioned and each described an altercation between the defendant and the victim. The defendant and the victim apparently saw each other in the vicinity of a local hangout in Minden, Joe’s Dixie Cream, at which time defendant hit the victim with a BB pistol. The victim fled, was chased by defendant and his companions, but managed to escape. He was later discovered by defendant and his companions hiding between two cars under a carport. Although the versions vary as to Poland and Dillard’s involvement, a fight ensued between defendant and Judgeware in the carport. The homeowner turned on the carport light at which time the group dispersed. The victim was later found dead in a nearby ditch as a result of a stab wound to the chest, apparently inflicted by Poland during the fight.
Defendant, Jerome Poland, and Frank Dillard, Jr. were arrested on November 15, 1990. Defendant and Dillard were charged with manslaughter, and Poland was charged with second degree murder. Poland pled guilty to manslaughter prior to defendant’s trial. Dillard’s case was pending at the time of the defendant’s trial.
DISCUSSION
ASSIGNMENT OF ERROR NO. 1
The defendant argues the judge erroneously refused to allow the victim’s arrest record into evidence. State’s witness, Officer Jack Tucker, who investigated the homicide, testified that he recognized the victim because “he had been arrested several times ... for theft and — ”. As defense counsel attempted to elicit information from Officer Tucker regarding the victim’s prior arrests, the state objected on the basis that (1) the victim’s character was not at issue, and (2) that defense counsel had not established the foundation required for the introduction of such evidence pursuant to LSA-C.E. Art. 404. The trial court sustained the state’s objection and struck the officer’s response from the record. Defense counsel objected to the court’s ruling on the basis that he intended to introduce evidence later in the trial that the victim was the aggressor.
The trial court correctly ruled that the victim’s arrest record was inadmissible. *840 Defense counsel failed to lay a proper foundation for the introduction of victim’s violent character, as required by LSA-C.E. Art. 404. Although defense counsel indicated that he intended to later introduce evidence that the victim was the aggressor or that he exhibited a hostile demonstration, he never did.
In brief, the defendant presents a different objection for the first time on appeal, complaining that the state failed to contemporaneously object to defense counsel’s questions regarding the victim’s arrest record. The record clearly indicates that the prosecutor objected contemporaneously to the challenged questioning. Furthermore, a new basis for an objection cannot be raised for the first time on appeal. State v. Cressy, 440 So.2d 141, 142 (La. 1983); State v. O’Neal, 501 So.2d 920, 924 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La.1987); LSA-C.Cr.P. Art. 841. For the above reasons, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant claims the trial court erroneously refused to allow the defense to call a defense witness on surrebuttal, or in the alternative to lead the defense witness on direct examination.
During the trial, defense counsel alleged that a supplemental police report written by Officer Tucker was not supplied to the defense until after Officer Tucker testified for the state. Defense counsel claimed that the report contained Brady material, but did not specify what exculpatory information was contained therein. Because the defense was not supplied the unspecified material, the defense requested permission to call defense witness Frank Dillard, Sr. for the first time on surrebuttal after the state’s rebuttal testimony of Officer Tucker. Frank Dillard, Sr., Frank Dillard, Jr.’s father, was present during an interview when Officer Tucker questioned his son. The defense apparently intended to ask Dillard, Sr., statement by statement, whether Officer Tucker’s report of the interview correctly recorded the statement given by Dillard, Jr. In the alternative, the defense requested permission to lead Frank Dillard, Sr. on direct examination during the defense’s case in chief.
The trial court denied defendant’s request to call Frank Dillard, Sr. after Officer Tucker’s rebuttal testimony, and also ruled he would not allow defense counsel to lead Frank Dillard, Sr. on direct. However, the record shows the trial court allowed defense counsel great latitude in questioning his witness, as evidenced by the yes or no questions regarding Dillard, Sr.’s assessment of the accuracy of each statement recorded in the supplemental police report.
Officer Tucker was later called by the state to rebut the testimony of Frank Dillard, Jr. Although Officer Tucker’s report was introduced into the record as a joint exhibit, it was not admitted in the presence of the jury and was not circulated to the jury for inspection. Our review of the report does not reveal any additional exonerating material which was not brought out at trial.
Although the prosecution has a statutory right to rebut evidence adduced by the defense, the defendant does not have a right to rebut the state’s evidence. The introduction of additional evidence before argument is within the discretion of the trial court. State v. Heath, 513 So.2d 493 (La.App. 2d Cir.1987), writ denied 519 So.2d 141 (La.1988); State v. Scroggins, 465 So.2d 820 (La.App. 2d Cir.1985), writ granted in part on other grounds, 469 So.2d 975 (La.1985); LSA-C.Cr.P. Art. 765. Finding no prejudice or error in the trial court’s rulings, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 3
On cross-examination, the prosecutor asked the defendant about an alleged statement he made to Yolanda Cotton:
And you never told her to tell Poland’s girlfriend to tell Poland to plead guilty because your daddy was a deputy sheriff and that nothing was going to happen to him?
At this point, defense counsel moved for mistrial on the basis that the prosecutor *841 referred to “other crimes” evidence, specifically extortion. LSA-C.Cr.P. Art. 770. The trial court denied the motion stating that the question was proper and did not implicate “other crimes" as prohibited by LSA-C.Cr.P. Art. 770(2).
LSA-C.Cr.P. Art. 770(2) provides that: Upon motion of the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
LSA-C.Cr.P. Art. 14:66 defines extortion as:
the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description.
The above question asked by the prosecutor does not suggest that the defendant threatened, Jerome Poland to secure an advantage or immunity, even though the question may suggest the defendant attempted to influence Jerome Poland’s actions. The question does not otherwise refer to or implicate a crime committed or allegedly committed by the defendant. Because the prosecutor was not referring to another crime, as required for a mistrial, this assignment is without merit.
ASSIGNMENT OF ERROR NO. 4
Lastly, the defendant urges that the state produced insufficient evidence to support a conviction of manslaughter. According to the defendant, he was unaware that Poland was carrying a knife, and did not anticipate that Poland would stab the victim during defendant’s one-on-one fight.
The defendant was convicted of manslaughter, LSA-R.S. 14:31 A(2), which is defined as:
(2) A homicide committed, without any intent to cause death or great bodily harm,
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemean- or directly affecting the person.
Because the prosecution did not produce any direct evidence to prove the defendant stabbed the victim, the state was required to prove that the defendant was a principal to manslaughter. LSA-R.S. 14:24 defines principal as:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals.
A person who aids and abets in the commission of a crime is guilty as principal although he does not directly commit the act constituting the offense. State v. Bernard, 441 So.2d 817 (La.App. 3d Cir.1983), writ denied 445 So.2d 439 (La.1984). Because the prosecution did not produce any direct evidence to prove defendant stabbed the victim, the only question at issue is whether the defendant directly or indirectly aided and abetted in the commission of the manslaughter, such to make him a principal to the crime.
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mathews, 375 So.2d 1165 (La.1979).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *842 State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988); State v. Hearold, 567 So.2d 132 (La.App. 2d Cir.1990).
T.C. Bloxom, former chief investigator for the coroner’s office, testified at trial that the victim had a knife wound to his chest, and three abrasions or cuts on his head which were apparently inflicted with a blunt object. He agreed with Dr. George McCormick, Caddo Parish Coroner, that the victim died of the stab wound to the heart.
Christine Murray, who lives in the home where the altercation occurred, testified that she heard people arguing outside her house saying: “Man, I ain’t got the stuff, I ain’t got your money, I ain’t got your stuff.” She stated that she looked out of the window, saw two people under the carport, and then turned on the carport light. As she walked outside, the defendant and victim were facing each other and wrestling. At this point she recognized one of the males as Clarence Judgeware and noticed that he was dripping blood.
Both Dillard and Poland testified that while at Joe’s Dixie Cream, the defendant wanted to scare the victim with the BB pistol to recover money he claimed the victim owed him. It is undisputed that defendant approached the victim and hit him with the gun at Joe's Dixie Cream. Dillard claimed the dispute arose over some fake marijuana the victim sold defendant one week earlier.
As the victim fled, the defendant initially ran after him, but gave up the chase. Later that evening as defendant, Poland, and Dillard walked around looking for the victim, they spotted him and chased him under a carport where defendant followed, demanding money. Dillard claimed defendant told him and Poland to stay back as he approached the victim to fight. According to Poland, defendant pointed the BB pistol at the victim, the victim knocked it away, and the two began fighting. Dillard testified he and Poland eventually ran under the carport to stop the fight. He stated he grabbed the defendant and kicked the victim away with his foot, and Poland grabbed the victim around the chest. It was at this point that Poland claims he saw a bloody knife on the carport which he picked up and closed. However, Dillard testified as they walked away, Poland told them he “cut the dude” and showed them a bloody knife.
Poland subsequently pled guilty to manslaughter, but claimed at trial that he did not stab the victim and that he pled guilty only out of fear that the defendant and Dillard would testify against him at a trial and that he would be found guilty because he owned the knife. Poland also denied telling anyone on the night of the incident that he stabbed the victim, although five witnesses testified otherwise. In addition to the defendant’s and Dillard’s testimony concerning Poland’s admission, Marcy Goldston testified that he saw Poland on the night of the stabbing, and Poland told him he stabbed a guy and that “it felt good.” According to Goldston, Poland was acting very nervous and even showed him the bloody knife. Darrell McElroy also testified that on the night of the stabbing Poland told him that he stabbed someone to “help Tim out”. After Poland showed McElroy the knife, he noticed blood on the knife and on Poland’s arm and jacket sleeve. Poland even demonstrated how he stabbed the victim and told McElroy “it felt good to him”.
Dee Powell testified that the defendant came to his house after the altercation and told him he had been in a fight. Although he asked Poland to stay out of his fight, defendant told Powell that Poland stabbed the victim. Powell testified that defendant’s jacket was bloody. When Powell talked to Poland later that evening, Poland admitted that he stabbed the victim and then asked for a bag for the bloody knife.
The defendant testified at trial that as he and the victim began fighting underneath the carport, the two were bumped from behind and fell to the ground. Defendant testified he recalled seeing Poland’s sleeve reach around him, but did not see if he had a knife. The defendant and victim were back on their feet and wrestling when the carport light came on.
*843 Defendant asserts he did not know Poland had stabbed the victim until after the fight when Poland showed him and Dillard the bloody knife and told them of the stabbing. The defendant admitted that the victim once sold him parsley for marijuana, but denied that he demanded money from the victim on the night of the fight. The defendant denied stalking the victim after he hit him with the gun at Joe’s Dixie Cream, and he did not recall that Dillard was trying to pull him away from the victim.
In the following cases, Louisiana courts have indicated certain factors that are pertinent in principal convictions. In State v. Wiggins, 465 So.2d 271 (La.App. 3d Cir.1985), the defendant and two companions set out to commit robbery. Edbert Simmons, Cornelius Gallien, and the defendant Wiggins spotted two men coming toward them and hid in some bushes. Simmons came out of the bushes, demanded money of the two men and fatally stabbed one of them as the two tried to escape. The defendant testified at trial that Simmons stabbed the victim for no apparent reason, and that he was simply in the wrong place at the wrong time. The defendant argued that the stabbing “was a purely spontaneous and unprovoked act on Simmons’ part, totally unrelated to him.” Id. at 273. Affirming the defendant’s conviction for second degree murder, the court noted that the defendant (1) knew Simmons was armed with a knife, (2) hid in ambush with Simmons and Gallien, (3) intended to participate in an armed robbery, and (4) fled after the stabbing. The court concluded that sufficient evidence was adduced to convict the defendant as a principal to second degree murder.
In State v. Clay, 441 So.2d 1227 (La.App. 1st Cir.1983), writ denied 446 So.2d 1213 (La.1984), the defendant and Barbara Jones fought with the victim, Lloyd Gosa, who suffered a fatal stab wound. Earlier in the day, the defendant had attempted to stab the victim for attempting to rape Jones. The earlier fight was broken up. Later that evening, the defendant, Jones, and Julius Moore spotted the victim and another fight ensued. The defendant and Moore were armed with knives. The defendant, Jones, and Moore all kicked the victim and hit him with glass bottles. The victim suffered one fatal stab wound to his back. Moore, having pled guilty to manslaughter, testified at the defendant’s trial that he stabbed the victim. Affirming the defendant’s conviction for second degree murder, the court held that even if Moore actually inflicted the wound, the defendant was no less a principal to the offense, because each possessed the requisite intent to commit the crime.
In State v. Myers, 584 So.2d 242 (La.App. 5th Cir.1991), writ denied 588 So.2d 105 (La.1991), the defendants were convicted of murder and manslaughter for the killing of Janet Myers. Each defendant asserted his innocence as to the actual killing. The defendant and his co-conspirator, William Fontanille, admitted they were present and fought each other for several hours in Myers’ home where Janet Myers was found bludgeoned to death. Though neither Myers nor Fontanille would admit participation in the killing, the court affirmed both convictions because both defendants (1) were present when the victim was murdered and (2) had blood splatters on their clothing which matched the victim’s blood. The court concluded that sufficient evidence was adduced that each defendant either physically committed the killing or participated as principal to it.
In the instant case, the evidence adduced at trial indicates that the defendant, Dillard, and Poland sought the victim out after he ran from the defendant at Joe’s Dixie Cream. The defendant admitted he instigated a fight under the carport and that the victim was attempting to hide from the group. The defendant was therefore the aggressor as to an aggravated battery of the victim. While the state was not required to prove that defendant intended to kill Judgeware, it had to prove that his death occurred while defendant was engaged in the perpetration or attempted perpetration of a felony not listed in LSA-R.S. 14:30 or 14:30.1 of the Criminal Code, or of an intentional misdemeanor directly affecting Judgeware. The abra *844 sions to the victim’s head indicate that the defendant committed an aggravated battery upon the victim with the BB pistol, or in the alternative, a simple battery, either of which acts would satisfy the elements of manslaughter. Thus, the only issue remaining is whether the defendant aided and abetted in the commission of the manslaughter.
As previously stated, the record is absent of evidence that the defendant stabbed the victim. In addition, no evidence was adduced to suggest that the defendant counseled Poland to stab the victim during the fist fight. Unlike the defendant in Wiggins, defendant testified he did not know that Poland carried a knife, nor that Poland had stabbed the victim until after the fight occurred. Without knowledge that one of his group was armed, it is arguable the defendant could not foresee that the stabbing would occur.
However, the jury was presented with sufficient evidence to conclude that Poland, Dillard, and the defendant together instigated the battery and were acting in concert when the stabbing occurred. This argument was presented to the jury in both opening and closing statements by the prosecutor and ample evidence was presented that all three men were physically involved in the altercation under the carport.
Defendant admitted at trial that he inflicted the first blows on the victim both at Joe’s Dixie Cream and under the carport. According to Poland, the defendant approached the victim at Joe’s Dixie Cream with a hood pulled over his head to conceal his identity. His conduct suggests (1) that the victim was afraid of him and would have fled had he recognized the defendant and (2) that the defendant was the aggressor. After the victim fled, Dillard, Poland, and the defendant stalked the victim together and discovered him hiding in a carport. Though the victim was obviously in fear of the group, the defendant followed him under the carport and battered him with the BB pistol.
The jury heard testimony that while under the carport defendant and both of his friends were hitting, kicking and stabbing the victim at one time. According to Officer Tucker’s rebuttal testimony, Dillard told him in his second statement that he entered the fight between the victim and defendant and kicked the victim before pulling defendant away. Poland admitted to the police and five friends on the night of the homicide that he entered the fight and stabbed the victim. Although the testimony varied as to the extent of Poland, Dillard, and the defendant’s involvement, the jury could have rejected their testimony that the defendant was engaged in merely a one-on-one fight. The jury heard sufficient evidence to conclude that defendant, Poland, and Dillard were concerned in a joint effort to badly harm the victim. The jury may have rejected defendant’s testimony that he was unaware Poland was carrying a knife, or intended to use it. Even if the defendant did not know his cohort was carrying a knife, there is sufficient evidence in the record to support the verdict.
The evidence shows the victim died from a stab wound in the upper chest. Both the defendant and Poland had blood on their clothing, though the serologist could not type the blood in order to match it to the victim’s. The owner of the house testified she saw the victim was bleeding while he and the defendant were wrestling, and that she found blood on the carport and on a car.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). The jury could have easily rejected the conflicting testimonies of the defendant and his accomplices as unworthy of belief, and concluded that all three acted in con *845 cert to badly injure the victim. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty of principal to manslaughter beyond a reasonable doubt.
DECREE
Based on the foregoing, we affirm defendant’s conviction.
AFFIRMED.