887 So.2d 554 (2004)
STATE of Louisiana
v.
Glenn A. BRUMFIELD.
Nos. 04-KA-552, 04-KA-553.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*555 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Cameron Mary, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
The Jefferson Parish Grand Jury returned an indictment charging defendant, Glenn Brumfield, with one count of first degree murder, in violation of LSA-R.S. 14:30. Thereafter, the Jefferson Parish District Attorney's Office amended the charge to second degree murder, a violation of LSA-R.S. 14:30.1, and also filed a separate bill of information charging defendant with attempted second degree murder, in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1, for a different victim stemming from the same set of circumstances. These two charges were consolidated and proceeded to trial before a twelve person jury. After considering the evidence presented, the jury found defendant guilty as charged on both counts.
The trial judge sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the second degree murder conviction, and fifty years at hard labor on the attempted murder conviction, to run concurrently. Defendant now appeals, challenging the sufficiency of the evidence used to convict him.

FACTS
On July 14, 2000, defendant shot Betty Pate and Kerry Dickerson in the parking *556 lot of New Orleans Shipyard. As a result of his injuries, Dickerson died. Defendant admits to shooting the victims, but claims that he committed the acts in sudden passion or heat of blood upon finding out about Dickerson and Pate's romantic relationship.
At trial, Betty Pate testified that she had ended her relationship with defendant in May or June of 2000, and started dating Dickerson, defendant's friend, in July. Defendant apparently learned about the relationship one to two weeks before the shooting. Ms. Pate testified that, on July 14, 2000, when she arrived home, she learned from her daughter that defendant had called several times. Defendant called back around 2:15 or 2:30 a.m. and asked if he could pick up the couple's six year old son to go fishing with him. Later, while going to pick up Dickerson from work at New Orleans Shipyard, she noticed defendant's Blazer parked at a Vietnamese store on River Road. A few minutes after she arrived at the shipyard, defendant drove into the parking lot, parked next to her van, and exited. Defendant, who was holding a gun, approached Ms. Pate while she was seated in her vehicle and said, "B____ I told you I was going to kill your f____ing ass." Defendant then aimed his gun and began shooting at Ms. Pate. He continued to shoot until the gun was empty. Then he put in another clip and shot her two more times. She was shot at approximately ten times, and was hit three times.
As the defendant was firing at Ms. Pate, the other victim, Kerry Dickerson, ran toward defendant and tried to disarm him. Defendant fired the gun several more times, and as Dickerson ran away, defendant continued to shoot at him. Dickerson died at the scene as a result of his injuries.
Witnesses, Reginald Newman and Bryon Adams, both testified that, on the morning of July 14, 2000, they saw a man exit his vehicle in the shipyard's parking lot, yell and curse at a female, and then shoot her. Newman saw the shooter stand close to Pate's car and fire multiple shots as she sat inside. Neither of the witnesses heard the woman say anything to the shooter. Adams saw Dickerson approach the shooter when he stopped to reload. Dickerson was wounded in the throat, and the shooter continued firing as Dickerson tried to run away. Dickerson did not say anything to the shooter.
Defendant was apprehended shortly after the incident and was brought to the police station where he gave two statements. In his statements, defendant claimed that Ms. Pate had a gun and that she shot at him, prompting him to run to his car to get his gun. With regard to Dickerson, defendant claimed that Dickerson charged at him and tried to get the gun. Defendant stumbled back and shot the gun low between Dickerson's legs and hip in order to get Dickerson off of him.

SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, defendant challenges the sufficiency of the evidence used to convict him of second degree murder and attempted second degree murder. Defendant asserts that he committed the acts in sudden passion or heat of blood upon finding out about Dickerson and Pate's romantic relationship, and therefore, he should have been convicted of the lesser included charges of manslaughter and attempted manslaughter.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, *557 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In order to prove second degree murder, the state must show the killing of a human being, and that defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. To prove an attempted second degree murder, the state must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. LSA-R.S. 14:27:30.1. State v. Bishop, 01-2548 (La.1/14/03), 835 So.2d 434.
Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but attempted second degree murder requires a specific intent to kill. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 898. Specific intent may be inferred from the circumstances and actions of the defendant, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. State v. Keating, 00-51(La. App. 5 Cir. 10/18/00), 772 So.2d 740, 743, writ denied, 00-3150 (La.10/12/01), 799 So.2d 494. A defendant's act of aiming a lethal weapon and discharging it in the direction of his victims supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188, 1197.
In order for the defendant to have been convicted of manslaughter and attempted manslaughter, the evidence would have to have shown that the homicide and attempted homicide, which would have been second degree murder and attempted second degree murder, were committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31(A)(1); State v. Hicks, 01-1064 (La.App. 5 Cir. 4/10/02), 817 So.2d 192, 197, writ denied, State v. Hicks, 02-1580 (La.5/30/03), 845 So.2d 1068. Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Rather they are mitigatory factors which may reduce the grade of the offense. In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. State v. Johnson, 01-1362 (La.App. 5 Cir. 5/29/02), 820 So.2d 604, 610, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. However, the provocation shall not reduce the homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. LSA-R.S. 14:31(A)(1); State v. McKinney, 99-395 (La.App. 5 Cir. 11/10/99), 749 So.2d 716, 721.
In the present case, defendant learned of the relationship between Dickerson and Pate, one to two weeks before he shot them. On the day of the shooting, defendant went through a regular workday beginning sometime after 2:00 p.m. and ending around 1:30 a.m. He was not angry when he spoke to his children in the early morning hours of July 14, 2000, and to Pate between 2:15 and 2:30 a.m. Afterwards, defendant waited at a Vietnamese store on River Road. When Ms. Pate's van passed by, he followed her into the parking lot of New Orleans Shipyard. He exited his vehicle, immediately began cursing at her, and reminded her that he told her he was going to kill her. Defendant aimed and shot at her until the gun was empty. *558 He then reloaded and shot at her again, for a total of ten times. While defendant was reloading the gun, Dickerson attempted to disarm him and was shot. Defendant continued to shoot at Dickerson as he tried to run away.
In an attempt to prove that the offenses were committed in sudden passion or heat of blood, defendant presented the testimony of his father, Willis Brumfield, and his mother, Gail Brumfield. Willis Brumfield testified that his son was very upset about Ms. Pate going out with his friend. Gail Brumfield testified that on Thursday, the day before the shooting, her son came to her very upset about Pate and Dickerson's relationship. She claimed that he was furious and ready to explode.
The jury rejected defendant's argument that he acted in sudden passion or heat of blood upon finding out about Dickerson and Pate's relationship. This determination is supported by the evidence. Defendant had learned about the relationship one to two weeks before the shooting. Over eleven hours elapsed between the time defendant spoke to his mother and the time of the shooting. On the day of the shooting, defendant went through a regular workday. He was not angry when he talked to his children or Ms. Pate in the early morning hours of July 14, 2000.
Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that the state proved the essential elements of second degree murder and attempted second degree murder beyond a reasonable doubt. We also find that defendant failed to prove that he acted in sudden passion or heat of blood. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record reveals that the trial judge did not accurately advise defendant of the period within which to file an application for post conviction relief. According to LSA-C.Cr.P. art. 930.8, a defendant has two years from the date his conviction is final to apply for post conviction relief, not two years from the sentencing date. Therefore, we remand to the district court with instructions to inform defendant of the proper provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion, and to file written proof in the record that defendant received the notice. State v. Hutchinson, 02-0060 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
Accordingly, defendant's convictions and sentences are affirmed, and the matter is remanded with instructions.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.