984 So.2d 132 (2008)
STATE of Louisiana
v.
Carl O. CHRISTIAN Jr.
No. 07-KA-684.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Cameron Mary, Gevin Grisbaum, Jeffery Hand, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
James A. Williams, Attorney at Law, Gretna, Louisiana, for Defendant/Appellant.
*133 Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
The defendant was convicted of second degree murder and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. In this appeal, defendant seeks review of his second degree murder conviction.[1]
The following facts were adduced at trial. On May 5, 2003, Cynthia Harris heard a gunshot while in the bathroom of her home on Mount Shasta in Marrero. She woke her husband and then heard a second shot. Ms. Harris and her husband went outside where they saw a body lying in the backyard of the house next door. Mr. Harris called 911 and then waited for the police.
Lieutenant Grey Thurman was called to the crime scene at approximately 5:00 a.m. When he arrived, Lt. Thurman observed the victim, Vernon Johnson, lying face down in the grass with his pants to his ankles and his shorts/boxers to his knees. The victim had an apparent gunshot wound to the groin and trauma to the head that was later determined to be a gunshot wound. Dr. Karen Ross with the Jefferson Parish Coroner's Office testified that both wounds were singularly lethal.
During the investigation, the police learned the victim had been with his girlfriend, Chaquita James (a/k/a Banana), the night before his body was discovered. Ms. James testified she had been with the victim and defendant off and on throughout the night starting around 9:00-10:00 p.m. when she met them at the PARD park after defendant called her and told her the victim had passed out. Ms. James woke the victim, who appeared intoxicated, and the three went to visit a friend at an apartment complex. According to Ms. James, everyone separated for an hour and ended up at the victim's mother's house.
Rose Johnson, the victim's mother, testified her son and defendant were at her house around 8:30 p.m. but left around 9:30 p.m. She explained her son returned with Ms. James and defendant around 4:11 a.m. Ms. Johnson learned her son had hit Ms. James in the mouth at which time she fussed at her son and told him to take Ms. James home. Thereafter, the victim, Ms. James, and defendant left Ms. Johnson's home and went to Ms. James' friend's apartment. Ms. James stated her friend did not want defendant to spend the night at her apartment because she did not know him. According to Ms. James, the victim went outside with defendant to "chill" but indicated he would return. The victim never returned and Ms. James learned of his death later that morning.
Ms. James identified defendant in a photographic lineup. The police then located defendant and brought him in for questioning. Defendant gave four separate recorded statements. In his last statement, defendant admitted shooting the victim twice. He claimed the victim made a sexual advance towards him so he shot him.
*134 In this appeal, defendant argues there was insufficient evidence to convict him of second degree murder because the State failed to prove he had the specific intent to kill the victim. Although he admits killing the victim, defendant contends it was only after he was provoked by homosexual advances made by the victim which caused him to lose self-control. Thus, defendant maintains he was only guilty of manslaughter, a lesser included offense to second degree murder.
The State responds that specific intent can be inferred from the circumstances. It contends defendant's act of firing a gun directly at the victim and hitting him once in the groin and once in the head is sufficient to show specific intent to kill. The State further maintains there was no evidence to support defendant's claim that he killed the victim in sudden passion.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Defendant was charged with and convicted of second degree murder. To prove second degree murder, the State must show (1) the killing of a human being, and (2) that the defendant had the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1(A). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent may be inferred from the circumstances and actions of the accused as well as from the extent and severity of the victim's injuries. State v. Packnett, 04-709, p. 6 (La. App. 5 Cir. 12/28/04), 892 So.2d 615, 619, writ denied, 05-599 (La.6/3/05), 903 So.2d 455. A defendants act of aiming a lethal weapon and discharging it in the direction of his victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Brumfield, 04-552, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 554, 557.
Manslaughter is defined in LSA-R.S. 14:31 as:
[a] homicide which would be murder either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offenders blood had actually cooled, or that an average persons blood would have cooled, at the time the offense was committed[.]
Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. State v. Johnson, 01-1362, pp. 11-12 (La. App. 5 Cir. 5/29/02), 820 So.2d 604, 610, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. Rather, they are mitigatory factors which may reduce the grade of the offense. In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. Id. The question for this Court on review, is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986).
*135 Whether sufficient provocation existed for the reduction of the grade of the offense to manslaughter is a question to be determined by the jury under the standard of the average or ordinary person, one with ordinary self-control. State v. Deal, 00-434, p. 5 (La.11/28/01), 802 So.2d 1254, 1260, cert. denied, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002). It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Packnett, supra at p. 8, 892 So.2d at 620
Although defendant contends he established the mitigatory factors of manslaughter, there is no evidence in the record that he acted in sudden passion or heat of blood. Rather, defendant's actions reflect he acted with deliberation and control. All of the people who were around defendant and the victim the night before the murder testified that there were no arguments of any type. The victim's mother, Rose Johnson, testified that the victim and defendant were at her house around 8:30 p.m. the night before the murder. She stated they left together around 9:30 p.m. and did not appear to be in any kind of argument or dispute. The victim and defendant returned to Ms. Johnson's house around 4:11 a.m. with the victim's girlfriend, "Banana." Shortly thereafter, the three of them left together. Ms. Johnson again stated there was no friction between the victim and defendant.
Chaquita James, "Banana," testified that she met defendant and the victim at the park around 9:00-10:00 p.m. She stated the three of them then visited a friend, separated for a while, went to the victim's mother's house, and then ended up at her friend, Amy's, apartment. Ms. James last saw the victim when he and defendant were "chilling" outside the apartment. Ms. James testified that during the time she spent with defendant and the victim prior to the murder, the two did not argue.
In his confession, defendant stated the victim made a homosexual advance towards him when they were at the park. He admitted he and the victim took Zanbar and were drinking at the time. Defendant claimed the victim ". . . put his head on my private area . . . [t]hen he put his hand down there you know," at which time he hit the victim and the two started wrestling. According to defendant, the victim "got his dick and he started shoving it trying to hit me in my a* *." When the victim refused to stop, defendant told the victim ". . . not right here, I'm a do it somewhere else, not right here. . . . I'm a f* * * you, you f* * * me, we gonna go by my people." The victim started to walk home and defendant told him he would meet him there. Defendant went home, retrieved his bicycle, and picked up a pistol. Defendant claimed he was only planning to scare the victim.
When defendant arrived at the victim's house, the victim was there with his mother and "his girl." The victim stated he wanted to go to his cousin's house so defendant and the victim left. The victim led defendant to the backyard of what appeared to be an abandoned house. Defendant claimed the victim pulled down his pants and then pulled down defendant's pants. Defendant stated the victim could not see the pistol in his hand. Defendant asked the victim what he was supposed to do at which time the victim replied, "I want you to f* * * me man." Defendant responded, "I'm a f* * * you alright," and then walked up to him and pulled out the gun. The two started wrestling and defendant shot the victim. Defendant explained that the victim "dropped" and apologized *136 at which time defendant shot him again. Defendant explained he first shot the victim "[i]n his dick." He then elaborated, "[t]he b* *ch f* * *ed me in my a* *, punk. He won't f* * * nobody else."[2]
This evidence does not support defendant's claim that he shot defendant in "sudden passion" or "heat of blood." After the initial sexual advance, defendant agreed to meet the victim at a different location for the purpose of continuing the sexual encounter. Defendant subsequently obtained a gun and willingly followed the victim to a planned second encounter. He deliberately shot the victim in the groin area to prevent him from engaging in sexual relations with anyone else. Despite the victim dropping to the ground and apologizing, defendant shot him a second time in the head.
We find that defendant failed to prove the mitigatory factors for a manslaughter verdict by a preponderance of the evidence, and therefore the foregoing evidence supports a conviction for second degree murder. Thus, there is no merit to defendant's argument.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find no errors which require corrective actions.
For the above discussed reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] This is defendant's second appeal. In his first appeal, State v. Christian, 05-635 (La. App. 5 Cir. 2/3/06), 924 So.2d 266, defendant sought review of his conviction for second degree murder. Without reaching the merits of defendant's appeal, this Court vacated defendant's sentence and remanded the matter for a ruling on an outstanding motion for post-verdict judgment of acquittal. Id. On remand, the trial court denied the outstanding motion and resentenced defendant to life imprisonment without the benefit of parole, probation, or suspension of sentence.
[2] It is noted that defendant underwent a rape exam after his arrest. The exam revealed no evidence of trauma, bruising, or tears around the rectal area.