NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 15-318

STATE OF LOUISIANA

VERSUS

JARVIS BERARD

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 13265
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

DAVID KENT SAVOIE
JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.

AFFIRMED WITH INSTRUCTIONS.

**Hon. J. Phillip Haney**
**District Attorney**
**Robert Leyton Odinet**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward John Marquet**
**Louisiana Appellant Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jarvis Berard**

**SAVOIE, Judge.**

Defendant Jarvis Berard was indicted for the December 22, 2012, second degree murder of his wife, Ada Nelson Berard. A jury trial commenced on June 23, 2014, and Defendant was found guilty as charged. Defendant was sentenced on August 14, 2014 to life imprisonment without the benefit of parole, probation, or suspension of sentence.

Defendant has perfected a timely appeal wherein he alleges that the evidence submitted was insufficient to sustain the verdict of second degree murder. He argues that manslaughter was the correct verdict under the facts and circumstances of the case.

For the following reasons, we affirm the conviction of second degree murder and direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received notice.

## ASSIGNMENT OF ERROR

In the early morning of December 22, 2012, after arguing with his wife, Defendant stabbed her twenty times with a knife. The victim died as a result of the stab wounds. Although he admits to stabbing his wife to death, Defendant argues that the facts do not support a conviction of second degree murder. Defendant contends that the killing was committed in sudden passion and the heat of blood caused by his wife's provocation. Therefore, it is his contention that this court should reduce the conviction to manslaughter and remand the matter for resentencing.

Second degree murder is defined as the killing of a person "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1). Manslaughter is defined in part as:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

La.R.S. 14:31(A)(1).

When a defendant raises the issue of sufficiency of evidence on appeal, a reviewing court, considering the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The actual trier of fact's *rational* credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution[.]" *State v. Mussall,* 523 So.2d 1305, 1311 (La.1988) (footnotes omitted). *See also State v. Marcantel*, 00-1629 (La. 4/3/02), 815 So.2d 50.

Vanessa and David Parker lived across the street from Defendant and his wife, Ada Berard. They testified that at approximately 3:00 a.m., on December 22, 2012, they heard screaming and pounding at their door. When they answered, they found Key'era Green, Ms. Berard's nine-year-old daughter, crying for help for her mother. The little girl started back across the street but turned back when she saw Defendant exit the house. The little girl and the Parkers went back into their house

and called 911. The little girl was bloodied from a cut on her hand. The Parkers testified that they had known the couple for a few years. They both stated that they had never observed the couple fighting during that time period.

Key'era Green, eleven years old at the time of trial, testified that there were three other children in the house that night—her older brother, Gregreon Green, a younger brother, Jaylon, and an infant, Jarvis. She testified that her mother went out that evening with her aunt, Ms. Berard's sister, Destiny Nelson. After her mother came home in the early morning, Ms. Berard and Defendant began fighting. Ms. Berard put on her nightgown and went into Gregreon's room to lay down with him. However, Defendant came into the room, and he and Ms. Berard continued arguing. When Ms. Berard went into the living room, Key'era, Gregreon, and Jaylon followed. Ms. Berard sat on the couch with Key'era. Key'era testified that Defendant pulled a knife from behind his back and began to stab her mother. She said that when her mother attempted to crawl away, Defendant kicked her in the face. Key'era tried to protect her mother and was cut on the hand. She stated that Defendant was drinking that evening, although she did not know what or how much. Finally, Key'era testified that her mother and Defendant fought often and, at times, the fights became physical.

Gregreon Green, aged fourteen at the time of trial, also testified. His testimony corroborated his sister's testimony. Ms. Berard went out at about nine or ten in the evening. She arrived back at home around two in the morning. She went into Gregreon's room, and when Defendant followed her into that room, Ms. Berard went into the living room and sat on the couch with Key'era. He testified that Defendant pulled a knife out of the pocket of his shorts and began to stab Ms. Berard. Gregreon said that his mother kept crying for him to stop. Gregreon

3

begged Defendant to take her to the hospital, but Defendant told the boy to find Ms. Berard's car keys. Defendant then left the house in the victim's vehicle.

Richard Watson, a Louisiana State Police trooper, was on duty the evening of December 22nd and he was the first responder on the scene. He testified that Defendant was not at the house when he entered and that he found Ms. Berard dead on the living room floor. Three of the children were across the street. Gregreon told him that his step-father probably went to his mother's house. Gregreon gave him directions to the house. Trooper Watson called for back-up and went to the address given to him. He found Defendant there, standing on the front porch with an infant in his arms. He did not approach Defendant until back-up arrived. Defendant was taken into custody without incident.

Destiny Nelson testified that the couple had been married for two years. She said that she did not go out with Ms. Berard that night, although Ms. Berard visited her house that evening. Ms. Nelson said that Defendant had called her during the day and was aggravated that his wife wanted to go out that evening. Ms. Nelson said that Defendant would often go out alone and sometimes stayed gone for several days. When that happened, Ms. Berard would go out by herself just to get back at him. Sometimes, she would just drive around.

Doctor Christopher Tape, a forensic pathologist with the Lafayette Forensic Center in Lafayette, conducted the autopsy on the victim. He testified that there were seventeen stab wounds and three incise wounds. The injuries were spread out across the body, mostly in the front, left chest area, left arm, and back. Four of the stab wounds were fatal injuries. He also reported that toxicology did not find any drugs or alcohol in the victim's system.

4

Defendant's argument that Ms. Berard intentionally provoked him to such a degree that he killed her in the heat of passion is not supported by the record.

> Manslaughter is a homicide, which would either be first or second-degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his cool reflection and self-control. *State v. Dressner*, 08-1366 (La.7/6/10), 45 So.3d 127 (citing La. R.S. 14:31(A)(1)). Additionally, the defense has the burden of proof of mitigating circumstances by a preponderance of the evidence. *Dressner, supra; State v. Lawson*, 08-123, p. 8 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 523. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. *Lawson, supra* (citing La. R.S. 14:31(A)(1)).

> Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Instead, they are mitigatory factors that may reduce the grade of the offense. *Lawson, supra*.

> Whether sufficient provocation existed for the reduction of the offense to manslaughter is a question to be determined by the jury under the standard of the average or ordinary person, one with ordinary self-control. *Lawson, supra.* It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *State v. Christian,* 07-684, p. 5 (La.App. 5 Cir. 3/25/08), 984 So.2d 132, 135. The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. *Lawson, supra* (citing *State v. Lombard*, 486 So.2d 106, 111 (La.1986)).

*State v. Patterson*, 10-415, pp. 15-16 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 150-51, *writ denied,* 11-338 (La. 6/17/11), 63 So.3d 1037.

Defendant further argues that "[c]onsidering the mutually antagonistic relationship between Mr. Berard and Ada, the inconsistent statements given by the eye-witnesses, and the antagonizing and provocative nature of their relationship, the defense proved by a preponderance of the evidence the defendant to [sic]

reacted in sudden passion or heat of blood, that his blood had not cooled, and that a verdict of manslaughter is the only proper verdict."

While Defendant asserts that Ms. Berard was the antagonist, Ms. Nelson's testimony revealed that it was a back and forth affair. She testified:

Q. And when you say "that's how they always do." Can you be a little more specific about that.

A. When he would - -

Q. What would they do to each other?

A. When he would leave or whatever, like when he would leave a week or just a day, she would get mad and he would come home and if she wanted to go out, she was going out.

Q. And did you reach any conclusion of why she was doing - - why your sister was doing what she was doing?

A. Because she was getting tired of Jarvis doing what he was doing.

Apparently, this behavior was nothing new to the couple. Furthermore, both children testified that Ms. Berard went into Gregreon's room to lie down and Defendant followed her into the room to continue the argument. When she left Gregreon's room, she went into the living room and sat on the couch—hardly the behavior of someone trying to escalate an argument. Also, it is notable that Defendant was carrying a knife at three o'clock in the morning.

There was also testimony that Defendant had been violent toward Ms. Berard in the past. Detective Luke Boudreaux and a former patrol officer, Todd Daigle, both with the Iberia Parish Sheriff's Office, testified that on two occasions in 2010 they were called to the Berard's residence because of domestic abuse complaints. In both cases, they testified that Ms. Berard was beaten, severely enough that on one occasion she was taken to the hospital by paramedics.

6

Defendant contends that Key'era's testimony was inconsistent with the testimony given by Gregreon. At trial, Key'era testified that Defendant took the knife out from behind his back, whereas Gregreon testified that Defendant pulled the knife from his short's pocket. Key'era also testified that her mother had gone out that evening with her aunt, the victim's sister. However, as later explained by Ms. Nelson, she was planning on going out with the victim but later decided against it. We conclude that these two inconsistencies were inconsequential and would not have affected the jurors' decision of whether Defendant was guilty of second degree murder or manslaughter.

Doctor Tape's description of how many times Ms. Berard was stabbed may be evidence of Defendant's anger; however, it was not sufficient to mitigate the second degree murder to manslaughter. While they were arguing and did have a rancorous relationship, arguments do not suffice to reduce a murder to manslaughter. *State v. Mille*r, 98-642 (La.App. 3 Cir. 10/28/98), 720 So.2d 829, *writ denied*, 98-3119 (La. 5/14/99), 741 So.2d 659. Furthermore, the fact that Defendant stabbed his wife so many times exhibited his intent to at least cause her great bodily harm. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La.R.S. 14:10(1); *State v. Butler,* 322 So.2d 189 (La.1975); *State v. Martin,* 92-0811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411. The evidence was sufficient to find Defendant guilty of second degree murder beyond a reasonable doubt.

The couple's behavior was nothing new, and Defendant had exhibited violence towards his wife in the past. Questions of whether there was sufficient provocation to reduce the offense of second degree murder to manslaughter are for the trier of fact to answer under the ordinary man with ordinary self-control

7

standard. *Patterson,* 63 So.3d 140. Finally, the record shows that the jury, after it began deliberation, requested that the trial court give it the definition of second degree murder and manslaughter. Therefore, the jury did consider whether the evidence was sufficient to mitigate the offense of second degree murder to manslaughter and obviously concluded there was insufficient evidence of provocation.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent.

The record before this court does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Accordingly, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## DECREE

Based on the foregoing, we affirm Defendant's second degree murder conviction. Further, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of the opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.  Uniform Rules—Courts of Appeal.  Rule 2–16.3.